UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. WHOLESALE OUTLET & DISTRIBUTION, INC., <br><br> Plaintiff, <br><br> v. <br><br> US WHOLESALE, <br><br> Defendant. | No. 2:20-cv-02379-KJM-AC <br><br> FINDINGS AND RECOMMENDATIONS |

This matter is before the court on plaintiff's motion for default judgment. ECF No. 11. The motion was referred to the undersigned pursuant to E.D. Cal. R. 302(c)(19). This motion was taken under submission for consideration on the papers. ECF No. 13. Defendant did not appear or oppose the motion. For the reasons set forth below, the undersigned recommends plaintiff's motion be GRANTED, and that judgment be entered in favor of plaintiff.

**I.      Relevant Background**

Plaintiff brought its complaint on November 30, 2020 raising allegations of unfair competition in violation of § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), Unfair Competition in Violation of Cal. Bus. & Prof. Code § 17200, Dilution in Violation of Cal. Bus. & Prof. Code § 14247, common law trademark infringement, and common law unfair competition. ECF No. 1 at 6-11. The following facts are drawn from the allegations of plaintiff's complaint.

Plaintiff is a family-owned wholesale business that purchases tobacco products, tobacco-related accessories, and other general merchandise from various companies, and then resells those products on a wholesale basis to retail outlets and other wholesalers. ECF No. 1 at 3. Plaintiff was incorporated in the State of California on August 20, 2009. Id. Since at least the date of its incorporation in California on August 20, 2009, plaintiff has made continuous use of its trade name, "U.S. Wholesale," in buying tobacco products, tobacco-related accessories, and other general merchandise, and selling those products on a wholesale basis to retail outlets and other wholesalers located throughout California. Id. Plaintiff has also continuously used its trade name in advertising campaigns and in communities located in California. Id. In addition, plaintiff has been actively involved in tradeshows in California to further promote its brand and business. Id. As a result of these and other efforts, plaintiff's customers and the general public have come to recognize U.S. Wholesale by that name as an established and successful wholesaler for tobacco products, tobacco-related accessories, and other general merchandise throughout California. Id. Plaintiff asserts its trade name is inherently distinctive, and therefore immediately protectable upon its use as a mark. Id. Plaintiff further asserts its trade name has also become distinctive through the acquisition of secondary meaning, over more than a decade of use in the wholesale and retail industry in California. Id. Its trade name—U.S. Wholesale—is uniquely identified with plaintiff's business. Id. Plaintiff's extensive use, promotion, and advertising have caused its trade name to become famous and widely recognized by the general consuming public in this District and the State of California, as a designation of the source of the goods of Plaintiff. Id. at 4. Plaintiff asserts its trade name possesses an extraordinarily valuable goodwill that belongs to plaintiff. Id.

Plaintiff alleges that in or around October 2020, it learned that defendant was using the trade name "US Wholesale" to advertise and sell tobacco products, tobacco-related accessories, and general merchandise from a location in Sacramento, California to customers located in California without plaintiff's authorization or consent. Id. Plaintiff U.S. Wholesale learned of defendant's use of the confusingly similar trade name "US Wholesale" after multiple customers of plaintiff contacted plaintiff and commented about it opening up a branch in the

Sacramento area, believing that defendant US Wholesale was the same business as plaintiff U.S. Wholesale.  Id.  Plaintiff obtained a copy of a flyer showing that defendants, using the name "US Wholesale," were advertising and selling many of the same tobacco products, tobacco-related accessories, and general merchandise that plaintiff advertises and sells, to customers in California.  Id.  On October 28, 2020, plaintiff U.S. Wholesale sent a letter to defendant US Wholesale requesting that it cease and desist from any further infringing use of plaintiff's trademark rights, and informing it that its use of the trade name US Wholesale has already caused actual confusion among California customers.  Id.  On October 31, 2020, defendant US Wholesale responded to plaintiff's letter, refusing to cease and desist from using the trade name "US Wholesale" unless plaintiff "prove[d] that there is an actual Registered Trademark with USPTO."  Id.

Defendant US Wholesale claimed in its October 31, 2020 letter that it was using the name "us" Wholesale (as in "us / we"), but on two separate occasions when plaintiff called defendant's listed phone number, both times it answered as "U.S. Wholesale" just like plaintiff's trade name.  Id. at 5.  On November 3, 2020, plaintiff responded to defendant US Wholesale's October 31, 2020 letter, informing it that registration with the USPTO is not required to enforce plaintiff's trademark rights under federal statutory law, as well as California statutory and common law.  Id.  Plaintiff also informed defendant US Wholesale that any continued use of the trade name "US Wholesale" after receiving plaintiff's original cease and desist letter would serve as evidence of intentional and willful infringement by defendants.  Id.  As of the date the complaint was filed, plaintiff had not received a response to its November 3, 2020 letter from defendant.  On information and belief, plaintiff alleges defendant continues to use the trade name "US Wholesale" to advertise and sell tobacco products, tobacco-related accessories, and general merchandise in California.  Id.  Plaintiff alleges defendant chose the trade name "US Wholesale" to trade off plaintiff's reputation and goodwill and has intentionally and willfully used the trade name "US Wholesale" to mislead customers in California.  Id.  As a result of the unauthorized use of the trade name "US Wholesale," customers in California have been confused as to whether the products being advertised and sold by defendant were being advertised and sold

by plaintiff U.S. Wholesale. Id. Plaintiff contends that as a result of defendant's unauthorized use of the trade name "US Wholesale," plaintiff has lost control of its reputation and goodwill, causing continuing irreparable injury. Id.

A summons, complaint, and copy of the order setting a status conference was served on defendant personally and by mail, per the summons returned executed filed with the court on December 9, 2020. ECF No. 6. Defendant did not appear, and plaintiff moved for entry of default on January 11, 2021. ECF No. 7. The clerk entered default on January 12, 2021. ECF No. 8. Plaintiff moved for default judgment on May 5, 2021. ECF No. 11. Plaintiff filed a certificate of service demonstrating that defendant was served with the motion for default judgment. ECF No. 12. Defendant did not respond to the motion for entry of default judgment and has not otherwise appeared in this case.

## II. Motion

Plaintiff moves for default judgment on all counts, seeking an order permanently enjoining and restraining defendant and its partners, officers, agents, servants, employees, and attorneys, their successors and assigns, and all others in active concert or participation with defendant, from using, in any manner whatsoever, the trade name "US Wholesale." ECF No. 11-5. Plaintiff also seeks an award of $15,840 in attorneys' fees and $560.55 in costs. Id.

## III. Analysis

A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court may consider the following factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law") (citation and quotation marks omitted); Abney v. Alameida, 334 F.Supp.2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's default conclusively establishes that party's liability, although it does not establish the amount of damages. Geddes, 559 F.2d at 560; cf. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990) (stating in the context of a default entered pursuant to Federal Rule of Civil Procedure 37 that the default conclusively established the liability of the defaulting party).

B. The Eitel Factors

1. Factor One: Possibility of Prejudice to Plaintiff

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff weighs in favor of granting a default judgment. See PepsiCo, Inc., 238 F.Supp.2d at 1177. Here, plaintiff would suffer prejudice if the court did not enter a default judgment because it would be without recourse for

5

recovery. Accordingly, the first Eitel factor favors the entry of default judgment.

### 2. Factors Two and Three: Merits of Claims and Sufficiency of Complaint

The merits of plaintiff's substantive claims and the sufficiency of the complaint are considered here together because of the relatedness of the two inquiries. The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F.Supp.2d at 1175. Here, the merits of the claims and sufficiency of the complaint favor entry of default judgment.

Plaintiff brings five causes of action: (1) unfair competition in violation of § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), (2) Unfair Competition in Violation of Cal. Bus. & Prof. Code § 17200, (3) Dilution in Violation of Cal. Bus. & Prof. Code § 14247, (4) common law trademark infringement, and (5) common law unfair competition. Although plaintiff has alleged five distinct claims, "the essential elements of the federal claim[] . . . if met with adequate evidence are sufficient to establish liability under the state law claim[s] as well." Phillip Morris USA Inc. v. Shalabi, 352 F.Supp.2d 1067, 1072 (C.D. Cal. 2004) (citing Brookfield Communications, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1046 n.6, 1047 n.8 (9th Cir. 1999)); see also, Cleary v. News Corp., 30 F.3d 1255, 1262–63 (9th Cir. 1994) ("This Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are "substantially congruent" to claims made under the Lanham Act.").

Section 43(a) of the Lanham Act makes actionable the deceptive and misleading use in commerce of "any word, term, name, symbol, or device" on any goods or in connection with any goods and is considered the federal law of unfair competition. Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery, 150 F.3d 1042, 1046 (9th Cir. 1998). To state a claim for unfair competition or trademark infringement under the Lanham Act, the complaint must allege that the plaintiff: "(1) ... has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion, thereby infringing upon the [plaintiff's] rights to the mark." Department of Parks and Recreation for State of California v. Bazaar Del Mundo Inc., 448 F.3d 1118, 1124 (9th Cir. 2006); see also, Topline Corp. v. 4273371 Canada, Inc., No.

6

C07-938Z, 2007 WL 2332471, at *4 (W.D. Wash. Aug. 13, 2007) (to prevail on a trademark infringement claim under section 32 of the Lanham Act or an unfair competition claim under section 43(a) of the Lanham Act, plaintiff must show: (1) that it owns a valid mark, and thus a protectable interest, and (2) that the alleged infringer's use of the mark is likely to cause confusion.). "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." Dreamwerks Production Group, Inc. v. SKG Studio, 142 F.3d 1127, 1129 (9th Cir. 1998). In evaluating the likelihood of confusion, the court employs an eight factor test. See AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979), abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prod., 353 F.3d 792, 810 n.19 (9th Cir. 2003).

Here, the complaint makes the requisite allegation of protectable ownership and plaintiff has supported the allegation with sufficient evidence. Whether a mark is protectible is determined by whether is meets the criteria for registration set forth in § 2 of the Lanham Act. "Registration is not a prerequisite for protection under § 43(a) . . . but courts look to the general principles qualifying a mark for registration under § 2 when determining whether an unregistered mark is protectable under § 43(a)[.]" Kendall-Jackson Winery, 150 F.3d 1047 n.2. A trademark is defined by statute as including "any word, name, symbol, or device or any combination thereof" used by any person "to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127.

> In order to be registered, a mark must be capable of distinguishing the applicant's goods from those of others. Marks are often classified in categories of generally increasing distinctiveness; following the classic formulation set out by Judge Friendly, they may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. The latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection.

Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992) (internal citations omitted).

In this case, plaintiff's trade name is protectable because it is arbitrary. "An arbitrary mark consists of common words arranged in an arbitrary way that is non-descriptive of any

7

quality of the goods or services." Off. Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1391 (9th Cir. 1993). The name "U.S. Wholesale" consists of common words arranged in an arbitrary way that is not descriptive of its services. Read literally, it denotes a wholesale business within or by the United States, without any obvious connection to tobacco sales. Plaintiff submitted an example of its advertising, a flyer issued by plaintiff advertising various tobacco products, related accessories, and general merchandise sold by plaintiff. ECF No. 11-2 at 5. The mark is protectible.

Plaintiff also successfully addresses each factor of the Sleekcraft test for likelihood of confusion: (i) strength of the mark; (ii) proximity of the goods; (iii) similarity of the marks; (iv) evidence of actual confusion; (v) marketing channels used; (vi) type of goods and degree of care likely to be exercised by the purchaser; (vii) defendant's intent in selecting the mark; and (viii) likelihood of expansion of the product lines. See Sleekcraft, 599 F.3d at 348-49. The court now addresses these factors in turn.

*(i)     Strength of the mark*

A "strong," or distinctive, mark is afforded greater protection under trademark law than a mark that is not strong. See, e.g., Sutter Home Winery, Inc. v. Madrona Vineyards, L.P., No. C 05-0587 MHP, 2005 WL 701599, *8 (N.D. Cal. Mar. 23, 2005) ("The strength of protection afforded to a trademark is proportionate to the likelihood that the public will remember the mark and associate it with the source of the trademarked goods" (citations omitted)). When evaluating the strength of a mark, courts consider both conceptual and commercial strength. Id.

The conceptual strength of a mark "is determined by its placement on a continuum of marks from 'generic,' afforded no protection; through 'descriptive' or 'suggestive,' given moderate protection; to 'arbitrary' or 'fanciful' awarded maximum protection." E. & J. Gallo Winery, 967 F.2d at 1291 (quoting Nutri/System, Inc. v. Con-Stan Industries, Inc., 809 F.2d 601, 605 (9th Cir. 1987)). The nature of a mark is determined by the "imagination test" and a "need test." Id. (citing Earthquake Sound Corp. v. Bumper Industries, 352 F.3d 1210, 1221 n. 4 (9th Cir. 2003)). Using the "imagination test" the court asks how much imagination a consumer must use to associate a given mark with the goods or services it identifies, and using the "need test" the

court examines the extent to which competitors need a mark to identify their goods or services. Earthquake Sound Corp., 352 F.3d at 1221 n. 4 (quoting Miss World (UK) Ltd. v. Mrs. America Pageants, Inc., 856 F.2d 1445, 1449 (9th Cir. 1988)).

Applying these tests, the court finds that plaintiff's mark is best classified as an "arbitrary" mark. Thus, the "U.S. Wholesale" mark is entitled to maximum protection. E. & J. Gallo Winery, 967 F.2d at 1291. Further, taking plaintiff's allegations as true, the U.S. Wholesale mark has commercial strength with a substantial customer base in California and across the United States. ECF No. 11-2 at 2. This factor weighs in favor of finding a likelihood of confusion.

### (ii) Proximity of the goods

"Where goods are related or complementary, the danger of consumer confusion is heightened." E.&J. Gallo Winery, 967 at 1291. Plaintiff submitted a declaration stating that both it and defendant are selling tobacco products, along with advertising flyers from each party making this demonstration. ECF No. 11-2. This factor weighs strongly in favor of finding a likelihood of confusion.

### (iii) Similarity of the marks

The "similarity of the marks" portion of the Sleekcraft test "is the most crucial factor in determining the likelihood of confusion." Sutter Home Winery, Inc., 2005 WL 701599 at *5. Here, plaintiff's mark ("U.S. Wholesale") is essentially identical to defendant's infringing use ("US Wholesale"). This factor weighs strongly in favor of finding a likelihood of confusion.

### (iv) Evidence of actual confusion

While evidence of actual confusion is not necessary to prevail on an infringement claim or to secure injunctive relief, it can provide persuasive evidence that future confusion is likely. See Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc., 944 F.2d 1446, 1456 (9th Cir. 1991). Plaintiff submitted testimony that it received reports of actual consumer confusion. ECF No. 11-2 at 2. This factor weighs in favor of finding a likelihood of confusion.

### (v) Marketing channels used

An analysis of marketing channels accounts for overlapping advertising streams. Because both plaintiff and defendant advertise and apparently conduct their business through flyers, there

is significant marketing channel overlap in this case. This factor weighs in favor of finding a likelihood of confusion.

   *(vi)   Type of goods and degree of care likely to be exercised by the purchase*

"U.S. Wholesale is a family-owned wholesale business that purchases tobacco products, tobacco-related accessories, and other general merchandise, and then resells those products on a wholesale basis to retail stores and other wholesalers throughout the State of California and across the United States." ECF No. 11-2 at 1. The degree of care used by vendors when purchasing wholesale tobacco is unclear, though evidence of actual confusion and potential accidental purchases from the wrong wholesale supplier indicate that this factor is neutral at best.

   *(vii)   Defendant's intent in selecting the mark*

Plaintiff contacted defendant regarding use of the mark asking it to cease and desist, and defendant responded by refusing to cease and desist from using the tradename US Wholesale unless plaintiff proved it had an actual registered trademark. ECF No. 11-3 at 2. Taking the allegations as true in this motion for default judgment, it appears to the court defendant's use of the infringing mark was intentional. This factor weighs in favor finding a likelihood of confusion.

   *(viii)   Likelihood of expansion of product lines*

This factor evaluates whether a parties' product line is likely to expand to create competition; where the parties are already in direct competition with one another, this factor is not relevant. See, e.g., Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc., 457 F.3d 1062, 1078 n. 12 (9th Cir. 2006) ("The final factor, '[a] likelihood of expansion in product lines,' warrants no discussion as it is 'relatively unimportant where two companies already compete to a significant extent'" (quoting Brookfield Communications, 174 F.3d at 1060)).

Based on a review of the entire record, plaintiff has demonstrated protectable ownership in the U.S. Wholesale mark and a likelihood of confusion stemming from defendant's unauthorized use. Accordingly, the second and third Eitel factors are satisfied as to the Lanham Act unfair competition claim and the analogous state and common law claims.

////

### 3. Factor Four: The Sum of Money at Stake in the Action

Under the fourth Eitel factor, the court considers the amount of money at stake in relation to the seriousness of defendant's conduct. Courts have held that where a plaintiff seeks only injunctive relief from the continued use of their trademarks, this factor favors entry of default judgment. PepsiCo, Inc., 238 F. Supp. 2d at 1176–77. Here, plaintiff seeks attorney's fees, costs, and injunctive relief. The amount at issue is proportionate to the seriousness of defendant's conduct and this factor favors entry of default judgment.

### 4. Factor Five: Possibility of Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations supporting its claims and affidavits in support of its allegations. Here, the court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F.Supp.2d at 1177.

### 5. Factor Six: Whether Default Was Due to Excusable Neglect

Upon review of the record before the court, there is no indication that the default was the result of excusable neglect. See PepsiCo, Inc., 238 F.Supp.2d at 1177. Plaintiff served the defendant with the summons and complaint. ECF No. 6. Moreover, plaintiff served defendant by mail with notice of its application for default judgment. ECF No. 12. Despite ample notice of this lawsuit and plaintiff's intention to seek a default judgment, defendant failed to defend itself in this action. Thus, the record supports a conclusion that the defendant has chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this Eitel factor favors the entry of a default judgment.

### 6. Factor Seven: Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782

F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F.Supp.2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F.Supp.2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Accordingly, although the court is cognizant of the policy favoring decisions on the merits – and consistent with existing policy would prefer that this case be resolved on the merits – that policy does not, by itself, preclude the entry of default judgment.

       7. <u>Conclusion: Default Judgment is Appropriate</u>

Upon consideration of all the <u>Eitel</u> factors, the court concludes that plaintiff is entitled to the entry of default judgment against defendant. What remains is the determination of the amount of damages to which plaintiff is entitled.

  C. <u>Terms of Judgment</u>

Plaintiff's motion for default judgment includes a request for a permanent injunction enjoining defendant from using the "US Wholesale" mark. ECF No. 11-5 at 2. 15 U.S.C. § 1116(a) provides that a district court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court deems reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." A permanent junction may be granted where the plaintiff demonstrates: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

"Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988). Moreover, "once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted." Vision Sports, Inc. v.

Melville Corp., 888 F.2d 609, 612 n.3 (9th Cir. 1989). And "the public has an interest in the enforcement of federal statutes." CoxCom, Inc. v. Chaffee, 536 F.3d 101, 112 (1st Cir. 2008). In light of the fact that there is no hardship to the defendant in enjoining defendant from using an identical mark to plaintiff's protected mark, the court recommends that plaintiff be awarded a permanent injunction.

Plaintiff's motion for default judgment also seeks an award of attorney's fees and costs. ECF No. 11-5 at 2. "An award of reasonable attorneys' fees and costs is expressly provided for in 'exceptional cases' of trademark infringement." Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 702 (9th Cir. 2008) (quoting 15 U.S.C. § 1117(a)). The term "exceptional cases" is generally accepted to mean cases in which trademark infringement is "deliberate and willful." See Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1409 (9th Cir. 1993) (interpreting the term "exceptional" to apply when "the infringement is malicious, fraudulent, deliberate, or willful."). An entitlement to reasonable attorney's fees may be found where the complaint alleges that the defendants conduct was willful and the defendant's default has been entered. See Derek, 528 F.3d at 702 ("Thus, all factual allegations in the complaint are deemed true, including the allegation of Poof's willful infringement of Andrew's trademarks. This default sufficiently establishes Andrew's entitlement to attorneys' fees under the Lanham Act.").

As noted above, however, the award of attorney's fees must be reasonable. See Intel Corp. v. Terabyte Intern., Inc., 6 F.3d 614, 622 (9th Cir. 1993) ("the district court must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate"). In this regard, Local Rule 293 requires a party seeking an award of attorney's fees to submit an affidavit addressing certain criteria that the court will consider in determining whether an award of attorney's fees is appropriate.

Plaintiff has submitted an acceptable affidavit indicating that it accrued attorney's fees in the amount of $15,840 and costs in the amount of $560.55. ECF No. 11-3 at 4-11. An award of the reasonable requested attorney's fees and costs is appropriate.

////

////

### IV. Conclusion

It is RECOMMENDED THAT:

1. Plaintiff's May 5, 2021 motion for default judgment, (ECF No. 11) be granted;

2. The court enter judgment against the defendant on all claims;

3. The court enjoin and restrain defendant and its partners, officers, agents, servants, employees, and attorneys, their successors and assigns, and all others in active concert or participation with defendant, from using, in any manner whatsoever, the trade name "US Wholesale."

4. The court grant plaintiff's request for attorney's fees in the amount of $15,840 and costs in the amount of $560.55; and

5. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections. Local Rule 304(d). Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: June 22, 2021

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE